## DIDIER, survivor, &c. *vs.* DAVISON, survivor, &c.

The exception in the statute of limitations of 1801, relative to actions which concern the trade of merchandize between merchant and merchant, their factors or servants, does not apply to a bill in chancery for an account and settlement, and for the payment of a balance due from one mercantile firm to another, by reason of joint adventures in which the two firms had been engaged; where all the items of the account, on both sides, were more than six years previous to the filing of the bill. In such a case the statute is a bar.

Where a right of action accrued previous to 1830, it is to be governed by the act of 1801 for the limitation of actions, and not by the new provisions of the revised statutes on the subject; although the defendant has promised to pay the debt whenever he should be able to do so, and the bill does not show such ability previous to 1830.

Where a debtor, who is absent from the state at the time the cause of action accrues against him, afterwards comes into this state, and is here publicly and openly, so that by reasonable diligence his creditor might have commenced a suit against him, it is a return into this state within the meaning of the fifth section of the act of 1801 for the limitation of actions.

But a mere clandestine return of the debtor, which will not enable the creditor, with ordinary diligence, to serve process upon him, is not such a return as will cause the statute of limitations of 1801 to commence running against the demand, so as to bar it in six years from such return to this state.

The open residence in this state, for three or four years, of one of two joint debtors who were absent at the time the cause of action accrued, and the subsequent residence in this state of the other joint debtor, is such a return of both debtors to this state as was contemplated by the statute; although in point of fact their creditors were not aware of the residence of either of such debtors in this state.

Under the act of 1801, if the debtor was in this state at the time the cause of action accrued against him, or came here subsequently, so that the statute once began to run against the demand, it continued to run, notwithstanding he departed from the state within the six years; and no subsequent disability would stop it.

Even the death of either of the parties, after the statute had once commenced running, would not prevent the limitation from attaching; except in cases which were provided for by some other statutory provision.

Under the provisions of the old statute of limitations, the return of one of two joint debtors into the state, after the right of action had accrued against both, and his subsequent death within the six years, will not bar the right of action against the survivor, who does not come into the state until within six years of the time when the suit is brought against him.

By the provisions of the revised statutes, where the right of action against a debtor accrued subsequent to the time when those statutes took effect, he must have continued to reside within this state for six years, to render the act of limitations a bar to the suit; and the time he has resided out of the state after the right of action accrued is not to be taken into the account, in the computation of the time within which the action must be commenced.

THIS was an appeal, from a decretal order of the assistant vice chancellor of the first circuit, allowing the defendant's plea to the bill filed in this cause.

In September, 1815, H. Didier, the complainant, and J. N. D'Arcy, since deceased, were copartners in business at the city of Baltimore, and the defendant J. Davison, and H. Hill, since deceased, were also copartners in trade residing out of the United States. This suit was commenced against Davison, who was temporarily in this state, in November, 1843, for an account and settlement, and for the payment of a balance due to the firm of Didier & D'Arcy, from Davison & Hill, by reason of certain joint adventures in which the two firms were engaged in 1815 and 1816. The bill alleged that the defendant Davison had resided out of the United States ever since the debt of his firm was contracted, and that at the time of the filing of the bill he resided at Cape Hayti; and that Hill, if living, was still a non-resident. The bill also stated, as a pretence of the defendant, that Hill came to the state of New-York to reside, in 1820, and resided there three or four years. But it charged that, if he did, the complainant and his deceased copartner were ignorant of it, and that Hill avoided them and gave them no opportunity to enforce their claim against him; that he was, at the time alleged or pretended as the period of his residence in this state, unable to pay the debt, or any considerable part of it, and had no property in this state belonging to him or his firm; and that he died at sea, and insolvent. The bill also stated, as a pretence of the defendant Davison, that he also came to New-York to reside in March, 1834, and continued to reside here until March, 1835, and that he again resided in this state from July, 1835, to September in the same year. But the bill charged that if such was the fact, the complainant and his partner were ignorant of it; and that he did not rent or purchase a store or dwelling house here, nor cease to transact business at his former place of trade out of the United States, nor did he afford the complainant any opportunity of enforcing or obtaining payment of his debt.

The defendant pleaded in bar to all the relief prayed for in

the bill, and to all the discovery, except as to his continued residence out of the United States, and as to the charges in the bill relating to the character of the residences of himself and Hill in this state, if they ever came here, that the complainant's cause of action or suit accrued, or arose, more than six years before the filing of the bill in this cause and the suing out of process against the defendant thereon. The plea also denied the allegation of the defendant's continued residence out of the United States; and averred that he came to the state of New-York to reside, with his family, about the 7th of March, 1834, and continued actually and openly to reside here, and to transact mercantile business, until March, 1835; that he then left this state for a time and returned again in July, 1835, and continued to reside here openly until September in the same year. The plea also averred that Hill came to this state to reside in 1820, and continued to reside here openly for three or four years. The answer in support of the plea stated, among other things, that Hill died at sea in 1824 or 1825.

The assistant vice chancellor allowed the plea, and ordered the bill to be dismissed, unless issue was taken upon the plea within ten days. For a report of the case before the assistant vice chancellor, see 2 *Sand. Ch. Rep.* 61.

*C. B. Moore & F. B. Cutting*, for the appellant. The statute of limitations (1 *R. L. of* 1813, *p.* 184,) does not bar the claims mentioned in the bill; because, as to some of the items, they are demands arising out of partnership transactions, and are cognizable only in a court of equity. The action of account is the only remedy at law which could apply, and that action will not lie when the partnership consists of more than two persons. (*McMurray* v. *Rawson,* 3 *Hill,* 62, *and cases there cited. Beach* v. *Hotchkiss,* 2 *Conn. Rep.* 425.)

This is a suit which concerns the trade of merchandize between merchant and merchant, and is therefore within the exception of the statute. (1 *R. L. of* 1813, *p.* 186, § 5.) The authorties cited by the revisers, (3 *R. S.* 703,) do not warrant their conclusions. (*Coster* v. *Murray,* 5 *John. Ch. Rep*

Didier v. Davison.

522, 531. *Murray* v. *Coster*, 20 *John.* 576, 591, 603, 604. *Atwater* v. *Fowler*, 1 *Edw. Ch. Rep.* 425, 426.) The case of *Barber* v. *Barber*, (18 *Ves.* 286,) relied upon by the assistant vice chancellor, is disapproved of in *Robinson* v. *Alexander*, (8 *Bligh's Rep. N. S.* 352,) where there had been no dealings for fifteen years. See also *Lansdale* v. *Brashear*, (3 *Monroe*, 330;) *Patterson* v. *Brown*, (6 *Id.* 10, 11;) *Manderville* v. *Wilson*, (5 *Cranch*, 15; *McLellan* v. *Crofton*, (6 *Greenleaf*, 307;) in which last case the chief justice reviews most of the authorities. See also the opinion of Senator Viele, (20 *John.* 590.) The plea is double. It sets up two separate grounds of defence under the statute of limitations; one on the return of Hill in 1820; the other, by the return of Davison in 1834. They lead to two distinct and separate issues, and require different replies to each. (*Beames' Pleas*, 13, 37, 39.) The answer either overrules the plea, by attempting to answer points covered by the plea; or it is defective, and fails to support the plea, by not denying that Hill and Davison have avoided the complainant, &c. and by not answering, both as to him and Davison, all the circumstances necessary to shew a fair and sufficient return, as against the complainant, within the meaning of the statute. To *avoid*, means to shun, to endeavor to shun—to escape. To *shun*, means to endeavor to escape. (*Johnson and Walker's Dictionaries*.) The return of Hill, in 1820, was not sufficient to bar this suit against Davison, under the circumstances disclosed by the pleadings. Nor was the return of Davison, in 1834, sufficient to bar this suit. The circumstances do not shew that his return was so notorious and public as to amount in law to constructive notice, or to raise the presumption that if the complainants had used ordinary diligence Davison might have been arrested. (*Little* v. *Blunt*, 16 *Pick.* 359. *Ruggles* v. *Keeler*, 3 *John. Rep.* 261. *Fowler* v. *Hunt*, 10 *Id.* 464. *White* v. *Bailey*, 3 *Mass.* 271.) The old statute of limitations, (1 *R. L.* 1813, *p.* 186,) had not attached or commenced running, in favor of Davison, at the time of its expiration on the first of January, 1830. Davison never was in this state until 1834; at which time the statute of 1813 had expired. He never had any vest-

Didier v. Davison.

ed rights under that statute. He was a resident of a foreign country until 1834, and the statute of this state, until he came within its jurisdistion, did not apply to him. The provision in the revised statutes, (2 *R. S.* 300, § 45,) was intended merely to save existing rights, and to prevent the new statute from having a retroactive operation. (*Revisers' Notes*, 3 *R. S.* 704.) The previous law not having attached in favor of Davison, before the revised statutes went into effect, his case is not within the spirit or intent of the 45th section; and was not contemplated as a case that needed to be excepted. And if the revised laws of 1813 had not begun to run when the revised statutes of 1830 went into effect, then his coming into this state, in 1834, does not bar this suit; because he left again in 1835, and did not return until 1844. (2 *R. S.* 297, § 27.) The right to plead the statute of limitations of 1813 never attached to Davison, because he never was a resident or citizen of this state, nor within its jurisdiction, until several years after its repeal. (*General repealing act*, § 5, 2 *R. S.* 779.)

If the complainant is barred in respect to his original demand, he may still have a right of action, upon the promise to pay when able; which right has accrued since 1830, and is to be governed by the revised statutes. (*Wait* v. *Morris*, 6 *Wend.* 395. *Waters* v. *Earl of Thanet*, 2 *Adol. & Ellis' Rep. N. S.* 757.) If the chancellor should dissent from these views and affirm the order of the court below, it should be without prejudice to the complainant's right to file a new bill, or to amend the present bill.

*James Smith*, for the respondent. The demand set forth in the bill of complaint, is one that may be barred by the statute of limitations. The statute commenced running when Hill came to the state of New-York to reside, in 1820; and the demand was outlawed in the year 1826, before the passage of the revised statutes. Even if the statute had not began to run as to Davison, in consequence of his not having returned to the state in the year 1820, when his partner first came here to reside, still, it had in part operated upon the action in question, and the

Didier *v.* Davison.

law as it existed before the revised statutes, and which had in part operated, must still be applied. The revised statutes do not interfere with the case, and consequently as Davison, himself, returned to the state in the year 1834, and continued to reside openly in the state, and to keep house therein for about one year, the statute at all events began to run as to him. And more than six years had expired, thereafter, before the commencement of this suit; so that in any event the demand is outlawed.

The bill having averred that the defendant had resided out of the United States of America ever since the debt had accrued, it became necessary to support the plea of the statute of limitations, by an answer denying that allegation, and making the discovery, in that respect, called for by the bill. And the plea is, under the circumstances of the case, entitled to the favorable consideration of the court. The demand is set forth in the bill as having arisen in the year 1816, about 28 years since. It is therefore a very stale demand, and this court should, either upon a plea of the statute of limitations, or upon an answer making the proper averment in that respect, presume a payment of the demand in question; and should refuse to entertain the bill.

THE CHANCELLOR. The first question for consideration in this case, is whether it is within the exception in the statute relative to actions which concern the trade of merchandize between merchant and merchant, their factors or servants. (1 *R. L. of* 1813, 186, § 5.) The recent decisions in England, and which appear to contain the most reasonable construction of this much contested exception, in the statutory provision, which was substantially the same in both countries, have placed it upon a ground which is capable of a rational application. In the case of *Inglis and another* v. *Haigh*, (8 *Mees. & Wels. Rep.* 769,) which came before the court of exchequer in 1841, it was held that the exception in the statute did not apply to an action of *indebitatus assumpsit;* but only to actions of account between merchant and merchant, their factors or ser-

Didier v. Davison.

vants, concerning the trade of merchandize, or to actions on the case for neglecting or refusing to account, in conformity to some express or implied duty to do so. And this decision of the court of exchequer was fully concurred in, the next year, by the judges of the court of common pleas, upon a full examination of the question, in the case of *Cottam* v. *Partridge*, (4 *Scott's Rep. N. S.* 819.) In the last case, it was also held that mutual dealings between merchants, where each was selling goods to the other, would not bring the case within the exception of the statute, unless there was some agreement, express or implied, that the sales on the one side should be set against those on the other, and the balance only be payable. In other words, the courts in England have settled the principle that the exception in the statute does not apply, although each merchant has items of account against the other, where the accounts are so separate and distinct that the parties may both bring actions of assumpsit, and recover the amount of their respective accounts, in case a set-off is not claimed by the adverse party; so that an action of account could not be brought by one against the other. It has also been recently settled in the house of lords, in England, that in a case between merchants, or between a merchant and his factor or servant, concerning the trade of merchandize, where an action of account could have been brought by the plaintiff at law, the right to file a bill in the court of chancery, for an account, is not barred by the statute of limitations; although there have been no dealings between the parties, nor any promise to account, for more than six years. (*Robinson* v. *Alexander*, (8 *Bligh's Rep. N. S.* 352.) And the case of *Barber* v. *Barber*, (18 *Ves. Rep.* 255,) decided by the master of the rolls in 1811, which was supposed to establish a contrary doctrine, was overruled. Or rather the report of that case was discredited; the lord chancellor, for the reasons stated in his opinion, supposing that the reporter had been misinformed, and that no such decision had ever been made by the distinguished judge who held the office of master of the rolls when the case of *Barber* v. *Barber* was supposed to have been decided.

Didier v. Davison.

But in a case in this state, *Costar* v. *Murray*, (5 *John. Ch. Rep.* 523,) my very able and learned predecessor, who has so recently closed his long life of uninterrupted public usefulness,(*a*) and has descended to the grave in the blessed assurance of the christian's hope, without a spot or a blemish upon the bright escutcheon of his fame, took a different view of this question. He, in effect, decided, although it was not necessary to the determination of the case before him, that where all the items of the account, on both sides, were more than six years before the commencement of the suit, the exception in the statute does not apply. And when that case came before the court for the correction of errors, (20 *John. Rep.* 583, *S. C.*) his equally distinguished legal brother, the then chief justice of the state, who still lingers among us, a specimen of the giant intellect of the past generation, expressed a clear and decided opinion that the exception in the statute did not apply to a case where the items of the account were all on one side. The supreme court also had previously decided that the exception was not applicable to the case of a settled or stated account. (*Ramchander* v. *Hammond*, 2 *John. Rep.* 200.) And the revisers, in their note to the new provision which they introduced into the revised statutes on this subject, consider it as the settled law here, that when all accounts have ceased for six years, the statute is a bar. (2 *R. S. 2d ed.* 703.) Whatever my own opinion might have been, upon the question under consideration, if it were now presented for the first time for decision here, I do not feel authorized to disturb what must be considered as the settled law in this state. It is not necessary, therefore, to examine the question whether an action of account could have been brought, at law, against Davison and Hill, for any part of the claim of Didier & D'Arcy, for the recovery of which this bill is filed.

The right of action in this case accrued previous to the first of January, 1830, and must be governed by the provisions of the act of April, 1801, for the limitations of actions. (1 *R. L. of* 1813, *p.* 184;) and not by the new provisions of the revised

(*a*) See a brief sketch of the life of Chancellor Kent, and a notice of the proceedings had, upon the occasion of his death, in the Appendix to this volume.

stutates on the subject. (2 R. S. 300, § 45. For although it is alleged in the complainant's bill that the defendant Davison promised, in his letter of 1817, to pay the debt whenever he should be able to do so, and the bill does not show such ability previous to 1830, the statute of limitations had not run upon the demand at the time of making that promise; and there was no agreement, on the part of Didier & D'Arcy, to suspend the enforcement of their demand until the defendant should be able to pay it. The right of the complainant to recover in this suit, therefore, depends upon the original liability of the defendant, and not upon the subsequent promise to pay when he should be able.

The next objection to the defendant's plea is that it is double. The form of this plea is, "that the cause of action or suit did not accrue or arise within six years previous to the filing of the bill." And the averments in relation to the residences of the defendant and of Hill, in this state, are merely inserted therein to meet the suggestions, in the bill, which were intended to bring the case within the exceptions of the statute. And if some of those averments are not mere surplusage, they all tend to establish the single point of the plea, that the right of suit accrued more than six years previous to the filing of the complainant's bill; and that the suggestions of the bill which were intended to bring the case within the exception of the statute of limitations are not true. I shall therefore proceed to consider the more important question, to the parties in this cause, whether either of the averments in the plea relative to the residences of Hill and of Davison, in this state, brings the case within the exception contained in the last clause of the fifth section of the act of April, 1801.

That section provides, that "if any person against whom any cause of any such action shall accrue, shall be out of this state at the time the same shall accrue, the person who shall be entitled to such action shall be at liberty to bring the same within the times respectively above limited, after the return of the person so absent into this state." Under this provision of the statute it has been held that if the person against whom the right of action accrued had never been in the state, before such right of action

accrued, the suit might be brought against him at any time within six years after he first came into the state; although more than six years had elapsed before he came here. (*Ruggles* v. *Keeler*, 3 *John. Rep.* 263.) And where the debtor comes into this state, after the right of action has accrued, and is here publicly and openly, so that by reasonable diligence his creditor might have commenced a suit against him before his departure from the state, it is a return into this state, within the meaning of the statute. (*Fowler* v. *Hunt*, 10 *John. Rep.* 464.) But a mere clandestine return, which will not enable the creditor, with ordinary diligence, to serve process upon him, is not such a return as will cause the statute of limitations to commence running against the demand; so as to bar it in six years from that time. (*White* v. *Bailey*, 3 *Mass. Rep.* 271.) It has also been held, under a similar provision in the statute of a sister state, that where the defendant, who did not reside in the state, was in the habit of making temporary visits there for a few days, once or twice a year, but without the knowledge of the creditor, who had persons watching to have him arrested if they could find him in the state, it was not a return to such state, within the meaning of the statute. (*Little* v. *Blunt*, 16 *Pick. Rep.* 359.) In the case under consideration, however, the open residence of Hill in the state for three or four years, from 1820 to 1824, and of Davison for one entire year, from March, 1834, was such a return of both these parties, to the state, as was contemplated by the framers of this statutory provision; although, in point of fact, Didier & D'Arcy, who resided in Baltimore, were not aware of the residence of either of their debtors in this state.

It has been repeatedly settled, under this statutory provision, that if the debtor is in this state at the time the action accrues against him, or comes here subsequently, so that the statute once begins to run against the demand, it continues to run notwithstanding he departs from the state within the six years; and that no subsequent disability stops it. Even the death of either of the parties, after the statute has once commenced running, will not prevent the limitation from attaching; except in cases which are provided for by some other statutory provision

Didier v. Davison.

There was, I believe, no provision in any of the statutes of this state, at the time of the death of Hill in 1825, by which the statute of limitations would be suspended by his death, if it had commenced running previous to that time ; although he died out of the state, within the six years, and insolvent. The question then arises whether the return of one of two joint debtors, into the state, after the right of action has accrued against both, and his subsequent death, is a bar to a suit against the survivor; who does not come into the state until within six years of the time when the suit is brought against him.

Upon the argument of this appeal I entertained a very strong and decided opinion that the return of Hill to this state, in 1820, would not have the effect to bar the right of action here against the defendant Davison. It is true, under the statute of James, in reference to disabilities of the parties who are to bring the suit by reason of non-residence, which provision was not incorporated into the statute of this state, it has been held, in England, that the exception in favor of non-resident plaintiffs did not apply where some of them were not beyond seas. For the absence of the other was no excuse for the failure to bring the suit, by those who were within the realm, they being competent to institute the suit for themselves and the absentee, who together were joint owners of the debt for which an action was to be brought. (*Parry* v. *Jackson*, 4 *T. R.* 515.) But in the case under consideration it would have been perfectly useless to institute a suit against Hill, who had no property, either of his own or of the firm of which he was formerly a member. And the reasons upon which the exception in our own statute is founded do not apply to such a case. I am therefore pleased to find that a recent decision of the court of queen's bench in England, made since the argument of this cause, confirms the strong impression which I then entertained as to the law on this point. In *Fannin* v. *Anderson*, (9 *Lond. Jur. Rep.* 969,) this question came before that court for decision, under a similar provision in the statute of Anne. And after a full argument, and taking time for consideration, the court decided that where one of the joint debtors was out of the realm when the

cause of action accrued, although the others were within the jurisdiction of the court at that time, he could not set up the statute of limitations as a bar; where the suit was commenced within six years after his return from abroad. And such I have no doubt is the reasonable and proper construction of our stat ute on that subject.

The residence of Hill in this state from 1820, and the neg lect to institute a suit against him, not being sufficient to take the case out of the exception in the statute, as to the defendant Davison, it remains to be considered whether the residence of the latter in this state, in 1834 and 1835, and the neglect to institute a suit for more than six years after he came here to reside, is a bar to the present suit. If this case depended upon the provisions of the revised statutes alone, it is evident that the suit would not be barred. As he left the state before the expiration of the six years, and only returned again a few days previous to the service of the process upon him in this suit, the 27th section of the title of the revised statutes relative to the time of commencing actions, (2 R. S. 297,) would prevent a residence here for less than six years from operating as a bar. For, by the provisions of that section, the time the debtor has resided out of the state after the cause of action accrued, is not to be taken into the account in the computation of the time within which a suit must be brought against him. But none of the provisions of the first four articles, of the title of the revised statutes before referred to, apply to cases where the right of action accrued previous to the first of January, 1830; although the person against whom the suit was to be instituted was not a resident of the state, so as to be liable to be sued here, until after the revised statutes went into operation. On the contrary, the limitation of the right to institute a suit against him, after he came into this state, depended entirely upon the laws which were in force previous to 1830. (2 R. S. 300, § 45.) The statute of limitations, therefore, commenced running immediately after the defendant Davison came here to reside, in March, 1834; and it continued to run, notwithstanding his subsequent absence from the state. For there is nothing to

take the case out of the general rule, which existed and still continues to exist, in reference to cases coming under the act of limitations of April, 1801, that where the statute once commences running it continues to run notwithstanding any subsequent absence or disability. (*Doe* v. *Jones*, 4 *T. R.* 300. *Peck* v. *Randall*, 1 *John. Rep.* 165.) The remedy at law being barred by the statute, which is applicable to the case, the suit in this court also must be considered as barred thereby.

The decretal order appealed from must therefore be affirmed, with costs.