## CUTLER, Administrator, &c., *v.* WRIGHT.

A party, seeking to avail himself of a defence, like usury, involving a forfeiture, is bound to allege and prove the facts necessary to establish it; and no presumption will be indulged in his favor.

Thus, where it was alleged that a foreign contract, reserving interest at the rate of eight per cent, was usurious: *Held*, that the party was bound to allege and prove that interest at that rate was forbidden by the law of the State under which the contract is to be construed. The presumption that the foreign law agrees with our own, is not indulged in such a case.

*It seems*, that the mere fact that, on a contract for the sale of land, a higher than the legal rate of interest is reserved upon the deferred payments does not render the transaction usurious.

A demurrer remaining upon the record is an admission of the facts stated in the pleading to which it is interposed, not only for the purpose of the argument, but as evidence upon the trial of the issue to which the pleading, demurred to, relates.

Accordingly, where, to a defence of the statute of limitations, the plaintiff replied successive absences of the defendant from this State: the defendant's demurrer to the reply was overruled, with liberty to him to withdraw it upon terms; but he went to trial without complying with those terms: *Held*, that the reply stood admitted, and no evidence was required of the facts therein stated.

APPEAL from the Supreme Court. Action upon a promissory note, made by the defendant and one Dardin, dated at Apalachicola, in Florida, October 11, 1841, and payable, at the same place, May 1, 1844, for the sum of $800 and interest at the rate of eight per cent, to Lewis Curtis and others, trustees, and by them indorsed to the plaintiff's intestate. Two defences were interposed: 1st, the statute of limitations; and, 2d, usury. To sustain the first defence, the defendant alleged in his answer that this action was not commenced within six years after the note became due and payable; and, to sustain the second defence, he alleged that the note was made and delivered in the State of New York, and not in the State of Florida, and that the contract in the note contained, for the payment of the money therein, specified was made within the State of New York; and that, by the laws of the State of New York, any

Cutler v. Wright.

contract whereby a greater sum than seven per cent was reserved on a loan of money was forbidden by law and void, whereby the said note became void and of no effect. This answer was interposed on the 26th of September, 1851. The reply was put in on the 31st of December, 1851. It set forth that, during the first part of the month of November, 1844, the defendant departed out of the State of New York, and continued absent therefrom up to about April 1, 1845; that, about November 1, 1845, he again departed out of the State of New York, and continued absent therefrom until about April 1, 1846. The reply then averred other absences of the defendant from the State, as follows: From November 1, 1846, until June 1, 1847; from November 1, 1847, until April 1, 1848; from October, 1850, to about August, 1851; and the plaintiff averred that the defendant was not a resident of, or present in, the State of New York for the term of six years in the aggregate after the maturity of said note and before the commencement of this action. It appeared that the summons was served on the defendant on the 30th of August, 1851. The defendant, in his answer, also set forth that the plaintiff, through his agent, had received the sum of $300 on account of said note; and the defendant claimed to deduct the sum from the amount due on the note. The plaintiff, in his reply, admitted that his agent, on the 9th of February, 1848, had received from the defendant the sum of $300 in part payment of said note. To this reply the defendant interposed a demurrer; and, upon hearing, judgment was rendered for the plaintiff on the demurrer, with liberty to the defendant to withdraw the same on payment of costs. This he did not elect to do; and, on the trial of the issue of fact raised in the action, a verdict was rendered in favor of the plaintiff, upon which judgment was entered in his favor at special term, and which, on appeal, was affirmed at general term in the first district. From this judgment the defendant appealed to this court.

· *John H. Reynolds*, for the appellant.

*Peter Y. Cutler*, respondent, in person.

DAVIES, J. The defence of usury presents, I think, no serious embarrassment to the plaintiff's recovering. The note upon which this action is brought is dated and made payable in Florida; and, although it was actually made and executed in this State, it is to be regarded as a Florida contract. In *Curtis* v. *Leavitt* (15 N. Y., 88), it is said, the authorities do not leave this question in doubt. (See authorities there cited. See, also, *S. C.*, 30, 296.)

It is not set up in the answer that, by the laws of Florida, this contract was usurious, and therefore void. The allegation that it was usurious and void by the laws of the State of New York, was an immaterial averment, and in no sense tended to show the usurious character of the transaction by the laws of Florida. If the defendant intended to avail himself of that defence, it is well settled, he must have pleaded it. Not having done so, we are to assume that, by the laws of Florida, the contract and rate of interest reserved in the note are unobjectionable. But, if this were not so, I think there can be no question that we are at liberty to look into the statutes of the State of Florida, to ascertain from them the rate of interest allowed on contracts to be performed in that State. The 426th section of the Code declares that printed copies of volumes of statutes, code or other written law, enacted by any other State, purporting to have been published by the authority thereof, shall be admitted by the courts and officers of this State, on all occasions, as presumptive evidence of such laws. It is provided, by the Revised Statutes of this State (1 R. S., p. 165, § 17), that the State library shall be the place of deposit of the laws of the several States. On examination, we find there the laws of the State of Florida, purporting to have been published by the authority thereof. We are commanded, by the legislature of this State, to admit such volumes, on all occasions, as presumptive evidence of the laws of that State. I think it clear, therefore, that it was competent for the plaintiff's counsel, on the argument of this cause in this court, to refer to such volume, so purporting to be printed and published by the authority of the State of Florida, as evidence of the

Cutler *v.* Wright.

laws of that State, without any further or other proof in rela-
tion thereto. And this provision of our statute obviates the
necessity of proving, on the trial or hearing of the cause, the
statutes of the other States of this Union, and thus unnecessa-
rily incumbering the cases with setting them out as evidence *in
hæc verba.* They may be cited and referred to on all occasions
in like manner as the statutes of this State; and, I think, the
case shows that this was assumed on the trial and on the argu-
ment of this case in the Supreme Court. By reference to the
volume of statutes of Florida above referred to, we find, on
page 234, the statute of that State regulating the interest of
money. Section 1 declares that it shall not be lawful, upon
any loan of money, &c., to take, directly or indirectly, above
the rate of eight dollars for the loan of one hundred dollars
for one year. In case a higher or greater rate of interest is
received or taken than is by that act allowed, the person taking
the same loses or forfeits only the amount of said interest.
We thus see that the rate of interest reserved by the note in
suit in this action is such as is allowed by the laws of Florida;
and this, as before shown, being a Florida contract, the defence
on this ground is not sustained.

But there is another view of this branch of the case which
is equally controlling, if the conclusions at which I have arrived
as to the effect of the demurrer upon the defence of the statute
of limitations are found to be sound and well sustained. In
reply to the defendant's answer setting up the defence of usury,
the plaintiff, in his reply, avers and states that the said note
and contract were made in the city of Apalachicola, in the
State of Florida, and that, by the laws of that State, eight per
cent was the legal rate of interest at the time of making said
note. To this reply the defendant demurred, thus admitting
the truth of the matters thus alleged, and on this demurrer
judgment was rendered in favor of the plaintiff. Such judg-
ment was unappealed from, and remains of record unreversed.
If it has the effect contended for by the plaintiff's counsel,
and which will be presently considered, then the allegations of
the reply are to be taken as established, and there was, conse-

quently, no usury or illegality in the reservation of eight per cent in this note; and the defence must, on this ground, also fail.

We come now to the consideration of the second ground of defence—the statute of limitations. The defendant, in his answer, set up this as one of the grounds of his defence. The provisions of the Code applicable to the questions presented for consideration, at the time this answer was interposed, will be briefly adverted to. By section 153, it was provided that, when the answer contained new matter constituting a defence, the plaintiff might, within twenty days, reply to such new matter, specifically denying the same, or might allege any new matter not inconsistent with the complaint, constituting a defence to such new matter in the answer. The plaintiff, therefore, in this case, set up, in reply to the new matter of defence contained in the answer, the absences of the defendant Wright from this State, at and for the periods before mentioned. This new matter was not inconsistent with anything set out in the complaint, but was strictly a defence to the new matter contained in the answer. It furnished a complete and perfect reply to such defence, if the plaintiff could avail himself of the successive absences of the defendant. That question will be hereafter considered. By the law of this State, the action upon this note was required to be commenced within six years after its maturity, or after the cause of action accrued. The note matured on the 4th day of May, 1844, and the plaintiff's cause of action thereon then accrued. The provisions of the Revised Statutes, in reference to which the reply in this action was framed, and on which the questions raised by the demurrer depend, are as follows: "If, at the time when any cause of action specified in this article shall accrue against any person, he shall be out of this State, such action may be commenced within the times herein respectively limited after the return of such person into this State; and if, after such cause of action shall have accrued, such person shall depart from and reside out of this State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement

of such action." (2 R. S., p. 297, § 27.) The questions presented in this case arise upon the second clause of the section above quoted; for it is not averred that the defendant was out of this State at the time the note became due, and when the cause of action accrued.

Assuming, for the present, that the facts set up in the reply are legitimately before us for our consideration, and are to be deemed as established, it is alleged, on the part of the defendant, that they cannot avail the plaintiff, for two reasons: First. That this branch of the section only applies to, and authorizes the deduction of, the first absence, and that the successive absences cannot be aggregated and deducted. Second. The reply does not aver any absence from this State of the defendant Dardin, and that, to bring the case within the statute, the absence of both the joint debtors should appear. The first objection has been disposed of by this court in the case of *Cole* v. *Jessup* (10 N. Y., 96). It was there held that the successive absences could be accumulated, and the aggregate deducted, under the latter branch of section 27, in cases to which that branch of the section applies.

In support of the second objection, already stated, the counsel for the appellant relies upon the case of *Brown* v. *Delafield* (1 Denio, 447). This case was distinctly overruled by this court in the case of *Denny* v. *Smith* (18 N. Y., 567), and a contrary rule there enunciated. It was, that the absence of one joint debtor from this State suspends the running of the statute of limitations against him, although his co-debtor has remained within the State. These two cases in this court dispose of these grounds of objection on the behalf of the defendant.

We now recur to the only remaining point to be considered, whether the facts set up in reply as matter of defence to the defendant's new matter of defence, contained in his answer, are before us for consideration. The solution of this question depends upon the effect to be given to the demurrer interposed to the plaintiff's reply and the unreversed judgment thereon adverse to the defendant. Section 155 of the Code provides

that, if a reply of the plaintiff to any defence set up by the answer of the defendant be insufficient, the defendant may demur thereto, and shall state the grounds thereof. By section 168 of the Code, as it stood in 1851, every material allegation of new matter in the answer, not specifically controverted by the reply, shall, for the purposes of the action, be taken as true. But the allegation of new matter in a reply shall not, in any respect, conclude the defendant, who may, on the trial, countervail it by proofs, either in direct denial or by way of avoidance. When, therefore, new matter was set up in a reply, under section 153, the defendant had two ways to meet it. First, if he deemed it insufficient to avoid the defence interposed by him, he could demur thereto, as authorized by section 155; and if he wished to controvert the facts so set up, he was not concluded by them on the trial, but the plaintiff would be left to prove them, and the defendant would then be at liberty to countervail them by proofs either in direct denial or by way of avoidance. If he elected to admit the facts stated in the reply, and claimed that they were insufficient in law to repel the defence interposed by him, the means of doing that were provided by section 155. If he desired to put the plaintiff to proof of the new matter set up in the reply, and reserve to himself the right to countervail it by proofs, either in direct denial or by way of avoidance, resort would be had to the *modus operandi* pointed out in section 168. The framers of the Code certainly never intended to permit a defendant to experiment with the court, and after he had obtained its judgment upon an alleged state of facts that they constituted no defence, to give him the opportunity of contesting the existence of facts which he had deliberately admitted, unless he complied with such terms as the court might impose on granting such permission. The defendant in this case elected to rely upon the rights secured to him by section 155, and interposed a demurrer. It is well settled that a demurrer admits the facts pleaded, and merely refers the question of their legal sufficiency to the decision of the court. (1 Chit. Pl., 700.) After judgment passed for the plaintiff on the demurrer, no further issue of

fact remained to be tried as to the matters set up in the pleading demurred to. If there had been no issue of fact raised by the defendant's answer, the plaintiff would have been entitled, under sections 269 and 246, to enter judgment against the defendant as upon his failure to answer.

But, in this case, issues of fact were made by the answer, and, therefore, final judgment could not be entered until those were disposed of. They have been tried by a jury and found in favor of the plaintiff, and he was then, and not till then, entitled to judgment on the whole record. On the trial of these issues of fact, the plaintiff was not called upon to prove those matters which the defendant had admitted by his demurrer. By the judgment on it, they stood on the record found in favor of the plaintiff. They established that the aggregate absences of the defendant, deducted from the time the cause of action accrued to that of the commencement of this suit, took this case entirely without the operation of the statute. Excluding those absences from the computation of time, much less than six years elapsed from the maturity of the note to the commencement of this action. This ground of defence, therefore, is not maintained.

It also follows, from these views, that the admitted payment by the defendant of the sum of $300 on account of the note, on the 9th of February, 1848, as averred in the answer and admitted in the reply, takes the note out of the operation of the statute. The answer avers the payment of this sum on the note, and claims a credit therefor. The reply admits the payment and concedes the credit, and avers it was made February 9, 1848. The demurrer admits the payment on that day; and we think this fact conclusively disposes of the defence of the statute of limitations.

It follows, if these views are correct, that the judgment appealed from should be affirmed, with costs.

SELDEN, J. The note upon which this action is brought is not only made payable, but bears date, at the city of Apalachicola, in the State of Florida. Upon its face, therefore, it

would appear to be a contract made, as well as to be performed, in Florida, and of course to be governed by the laws of that State. The presumption, however, that it was made at the place where it was dated, was liable to be repelled by proof; and evidence was introduced at the trial for that purpose, which, it is claimed, established the fact that the note was a New York contract, and hence that its validity must depend, not upon the law of Florida, but upon that of New York. If the evidence on this subject was closely scrutinized, it might admit of some doubt whether the whole contract of which the note was a part should not be considered as actually made in Florida, although the papers constituting the written evidence of the contract were drawn and signed in the city of New York. But as, in the view I take of the case, it cannot affect the result, I shall assume that the contract, pursuant to which the note was given, as well as the note itself, was made in New York.

*Prima facie,* a contract is to be governed, in respect to its construction and validity, by the law of the place where it is to be performed. Hence, if a security is made in one country or State, but is payable in another, the rate of interest, if nothing is said on the subject, is to be regulated by the law at the place of payment. (*Cooper* v. *The Earl of Waldegrave,* 2 Bea., 282.) Of course, therefore, it can be no objection to the validity of such a security that it expressly provides for the payment of interest at that rate. It is true that if the security is made payable elsewhere for the mere purpose of evading the usury laws of the place where it is made, it will be usurious and void. But this is a fact to be established by proof. The judge, in this case, was requested to instruct the jury that they might find, from the evidence, that the place of payment was inserted as a mere cover for usury; but there was nothing in the case upon which to base such a charge. The transaction out of which the note arose, was substantially a Florida transaction. The makers of the note lived in Apalachicola; the consideration for which it was given was located there; and it was both natural and proper that the parties should fix upon that as the place of payment.

But as the rate of interest inserted in the note exceeds the rate allowed in this State, the defendant's counsel insists that the note is, *prima facie,* usurious.   He relies upon the ordinary presumption that the laws of a foreign State, nothing being shown to the contrary, correspond with our own; and claims that it was incumbent upon the plaintiff to repel this presumption by proof that the law of Florida allowed interest at the rate mentioned in the note.

I doubt whether the presumption relied upon extends to a case of this kind.   Our statute of usury is highly penal.   It forfeits the entire debt.   At common law, the contract would be perfectly good.   We are not, I think, called upon to presume that foreign States have adopted all our penal legislation.   If, however, we assume the contrary, it would not affect the result in this case.   Although no direct proof appears to have been given in this case as to the law of the State of Florida, it seems, nevertheless, to have been assumed, throughout the trial, that, by that law, eight per cent interest, the rate provided for by the note, was allowed.   Nearly all the applications made to the judge, at the close of the case, for specific instruction to the jury, would otherwise be senseless and unmeaning.

The judge was requested to charge, that "both the contract and note having been made in the State of New York, the reservation of eight per cent interest" rendered the note usurious and void; also, "that the fact that land in Florida formed the subject matter for which the note was given was immaterial on the question of usury," for the reason that the note was made payable to residents of the city of New York, and pursuant to a contract made there; and, again, that the note having been given in New York to citizens of that State, and upon a contract made there, the jury might find that its terms were designed as a cover for usury.   Each of these requests would be wholly unmeaning, unless it be assumed that, by the law of Florida, the note would be valid.   The opinion of the Supreme Court, delivered at general term, is based upon the express assumption that, by the law of that State, eight per cent interest was allowed.   It is too late now, therefore, to take

the ground that there was no proof on that subject. The fact was, no doubt, mutually understood and conceded upon the trial.

But there is another reason why the defence of usury cannot prevail. The note was not given for a loan of money or of goods, or for a preëxisting debt of any kind, but upon a sale of lands in Florida. The case, in that respect, is precisely like that of *Beete* v. *Bidgood* (7 B. & C., 453), where notes, executed in England and payable in England, but given for the purchase money of an estate in Demarara, included interest at six per cent, which exceeded the rate allowed in England. The Court of King's Bench held that the notes were not usurious; that, although the word interest was used, the substance of the transaction was, that the purchase money of the estate was to be paid in installments of a certain amount—a contract which was in no respect illegal. There can be no doubt of the correctness of this decision. To constitute usury, there must be either a present loan or a forbearance in respect to some debt previously existing. In such a case as this, there is neither. No error, therefore, was committed upon the trial, so far as the defence of usury is concerned.

In respect to the defence of the statute of limitations, it is insisted by the defendant's counsel that, although the defendant demurred to the plaintiff's reply to that branch of the defence, and although this demurrer was brought to argument and overruled by the court, it was nevertheless incumbent upon the plaintiff, upon the trial, to prove the facts set out in his reply. There is clearly no foundation for this position. A demurrer to any pleading admits the facts stated in it, not merely with a view to obtaining the opinion of the court upon those facts, but for the purposes of the case. After decision upon a demurrer, the party may, by the special permission of the court, withdraw his demurrer, and take issue upon the facts; but while the demurrer remains upon the record, the facts admitted by it cannot be controverted, so far, that is, as the particular series of pleadings is concerned which terminate in the demurrer. If there are other issues involving the same facts, they are not affected by the demurrer.

Suppose the statute of limitations had been the only defence set up in the answer, and the plaintiff's reply to that defence had been demurred to : must the plaintiff, notwithstanding a decision in his favor upon this demurrer, still bring the case to trial for the purpose of establishing the facts admitted by the demurrer? This can hardly be pretended. The statutory denial of new matter in a reply, which results from section 168 of the Code, is precisely equivalent to a denial by a rejoinder, if that had been permitted; and a party could never, at common law, demur and rejoin at the same time to the same replication. He might do this in succession; that is, he might withdraw his demurrer after a decision upon it, and then rejoin by the special leave of the court, but not otherwise. The order entered upon the decision of the demurrer in this case expressly authorized the defendant to withdraw his demurrer upon payment of costs. If he had availed himself of this privilege, the reply would then have stood controverted by force of the provisions of section 168 of the Code. Having omitted to do this, the decision of the demurrer was final, and entitled the plaintiff to judgment, so far as the defence of the statute of limitations was concerned.

The decision of the demurrer itself, however, may still be reviewed. The principal question which that presents is, whether all the successive absences of the defendant Wright from the State are to be deducted from the time which elapsed between the date of the note and the commencement of the suit, in determining whether the statute attaches, or only the first of those absences. The right of action upon this note having accrued before the Code, this question depends upon the provisions of the Revised Statutes. (Code, § 73.) The last clause of section 27, 2d Revised Statutes, page 297, provides that "if, after the cause of action shall have accrued against any person, he shall depart from and reside out of this State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." It was held by Mr. Justice NELSON, in *Dorr* v. *Swartwout* (5 N. Y. Leg. Obs., 172), that, under this provision, only a single absence

could be deducted; but the late Supreme Court, in the case of *Burroughs* v. *Bloomer* (5 Denio, 532), and the Superior Court of the city of New York, in *Ford* v. *Babcock* (2 Sand. S. C., 518), declined to follow that decision, and this court, in the case of *Cole* v. *Jessup* (10 N. Y., 96), where the precise question arose, held, without a dissenting voice, that, under the proviso in question, successive absences might be accumulated and the aggregate deducted. This question, therefore, must be considered settled. This disposes of the defence of the statute of limitations, so far as the lapse of time is concerned. It is shown, in the opinion of the Supreme Court, that the several absences of the defendant Wright amounted in the aggregate to one year and ten months; and as the whole period, between the time when the note fell due and the time when the summons in this case was actually served, was only about seven years and four months, it is clear that the statute had not attached.

But it is contended that the reply is insufficient, because it does not aver the absence of Dardin, the other maker of the note. This averment was unnecessary. The statute may attach and the suit be barred as to one of two joint makers of a note, and the cause of action still remain as to the other. (*Fannin* v. *Anderson*, 9 Lond. Jur., 969; *Didier* v. *Davison*, 2 Barb. Ch., 477.) I deem it unnecessary particularly to examine the case in reference to the alleged want of consideration of the note. There is clearly no error in that part of the case.

The judgment of the Supreme Court should be affirmed.

CLERKE, J. (Dissenting.) With regard to the defence of usury, the judge charged the jury that, if they found the contract, upon which the note was given, was in good faith intended to be performed in Florida, and was made in reference to the laws of that State, said note was not usurious, though made in the State of New York, and purporting to bear eight per cent interest on its face. There was no proof whatever of what rate of interest the laws of Florida allowed; and if it devolved on the plaintiff to prove this, I am inclined to think the charge erroneous; otherwise, it was correct. He was right in assuming

that the legality of the rate of interest was to be determined by the laws of Florida; but are we to presume that they allow interest at the rate of eight per cent? The opinion delivered in the Supreme Court either assumes that it was proved that the laws of Florida allow this rate of interest, or dispenses with the necessity of proving it.

It is a well established rule that foreign laws are regarded as facts, and should be alleged and proved like other facts of which the courts do not take judicial notice; and, in the absence of such allegations and proofs, our courts will presume that the foreign laws are in accordance with our own. In *Leavenworth* v. *Brockway* (2 Hill, 201), to which we have been referred, the action being on a promissory note, payable at the Franklin Bank, Columbus, Ohio, the plaintiff claimed to recover interest from the time the note fell due, at the rate of six per cent interest, to which the defendant objected, insisting that the plaintiff must prove the note drew interest by the laws of Ohio, and must recover according to the rate established there. The circuit judge overruled the objection, and the decision was sustained by the Supreme Court. The point sustained was, that the New York rate of interest would have been the proper allowance under the existing state of proof, had not the plaintiff voluntarily relinquished one per cent. In the note to this case, several authorities are quoted to show that, where a note is made in another State, or pursuant to a contract to be fulfilled in another State, interest will be allowed according to our laws, where there is no averment of the laws of the foreign State, or that interest is there recoverable.

But where a party insists upon a forfeiture, upon the ground that he is entitled to it by the laws of a foreign State, because, in similar instances, a forfeiture is allowed by the laws of this State, will his claim be recognized without proof of the law of the foreign State? Would not this be a presumption in favor of a forfeiture? It does not follow, because a plaintiff will be allowed interest on a foreign note at the rate allowed in this State, in the absence of proof of what the foreign State allows, that the defendant will be sustained in alleging a total forfeiture

of the debt, without proving, on his part, that the interest agreed upon exceeds the rate allowed in the foreign State, and that this excess, by the laws of that State, creates a forfeiture of the debt. In Kentucky, where a note, made in Maryland, was alleged to be usurious, and there was no proof showing what the law of Maryland was upon that subject, it was held that the court could not pronounce the note usurious. (*Green-wade* v. *Greenwade*, 3 Dana, 495.) " It is clear," say the court, " that the laws of Maryland govern the contract. If usurious or void, in whole or in part, it must be made so by the laws of that State, and not by the laws of Kentucky. What may be the legal rate of interest in Maryland, and whether any, and, if any, what law existed in said State against usury when this contract was made, this court cannot judicially know. These are facts to be averred and proven like other facts." In *Thompson* v. *Ketchum* (8 J. R., 190), where infancy was set up as a defence to a note made in Jamaica, and the defendant proved that he was under twenty-one years of age when it was executed, it was held that the *onus* lay with him to show, further, that, by the law of Jamaica, the defence was sustainable. " The court cannot know, *ex officio*," says KENT, Ch. J., pronouncing the opinion of the court, " what are the rights and disabilities of infants, or when infancy ceases, by the provincial law of Jamaica. These questions depend much upon municipal regulations; and what the foreign law is, must be proved as a matter of fact. This was so ruled by Lord ELDON, in *Male* v. *Roberts* (3 Esp. N. P., 163). The defendant was bound to make out a valid defence; and it therefore lay with him to show that this plea of infancy was good by the law of Jamaica." So, in the case before us, the defendant was bound to make out his defence by showing that, by the law of Florida, it was unlawful to reserve eight per cent per annum upon the loan or forbearance of money. The party seeking advantage from a foreign law, imposing a penalty or a forfeiture, must prove its existence; and this is perfectly consistent with the principle that, ordinarily, on a common law question, the law will be assumed to be

Cutler *v.* Wright.

the same as that of the State where the court adjudicating upon the matter sits.

The result, therefore, at which the Supreme Court arrived, on this branch of the case, was correct; although the true ground upon which it depended seems to me to have been ignored or overlooked.

With regard to the defence of the statute of limitations, the Supreme Court deals with it as if the various absences of the defendant set up in the reply were regularly proved. We have seen that there was no proof whatever at the trial on this subject; and although there is no allusion to the want of proof in the opinion of the court, we must suppose it was considered that the demurrer to the reply admitting those absences dispensed with the necessity of proof. Is the proof of the several absences stated in the reply rendered unnecessary because the defendant demurred to that part of it which alleged those facts? It will be borne in mind that, in the case before us, the demurrer was argued and decided at the special term; the demurrer was overruled and judgment for the plaintiff ordered, with leave to the defendant to withdraw the demurrer on payment of costs. The costs were not paid; but the parties proceeded to try the issues of fact before a jury in the usual way—the plaintiff thus waiving the conditions upon which the defendant was allowed to prove his defence. Undoubtedly a demurrer admits all such matters of fact as are sufficiently pleaded; and the only question for the court, on the argument of the demurrer, is, whether, assuming those facts to be true, they sustain the case of the party by whom they are alleged. But this admission is effectual only for the purpose of the argument, in that branch of the court where it takes place; and when the demurrer is overruled, with permission to the demurring party to withdraw it on certain conditions, the opposite party can enforce the conditions. If he consents, however, without doing this, to proceed to the trial of the issues of fact, the admissions imputed by the demurrer being merely hypothetical for the purpose of the argument, he is bound, in the absence of any stipulation or order to the contrary, to prove his facts pre-

cisely as if there had been no demurrer. Proceeding to try the issues of fact before a jury is practically a withdrawal of the demurrer; it thus ceases to be a part of the record, and its admissions are no longer available for, or against, either party.

What, then, has the plaintiff alleged and proved in answer to the assertion of the defendant that the debt is barred by the statute of limitations?

The note became due on the 1st of May, 1844, and on the 15th of May, 1851, the plaintiff caused a summons to be placed in the hands of the sheriff of New York, with directions to serve the same, intending to have it served as soon as the defendant returned from California, where the plaintiff then was, and where the plaintiff knew he was. If we are to take the 15th May, 1851, as the proper time for the commencement of the action, it would leave a period exceeding six years. But it was really commenced only when the summons was actually served on the defendant on the 30th August, 1851. Section 99 of the Code declares that " an action is commenced as to each defendant when the summons is served on him, and that an attempt to commence an action is deemed equivalent to the commencement thereof, within the meaning of the title, when the summons is delivered, with the intent that it shall be actually served, to the sheriff, &c., of the county in which the defendants, or one of them, usually or last resided. But such an attempt must be followed by the first publication of the summons, or the service thereof, within sixty days." In this case, there was no publication of the summons; and it was not actually served until the expiration of more than double that time; so that, as far as we can judge from the state of the evidence and admissions, more than six years elapsed, after the cause of action accrued, before the action was commenced—the plaintiff failing to show anything to save his case from the operation of the statute.

From these considerations, I am of opinion that the judge, at the trial, erred in refusing to charge that " the note appearing on its face to be due more than six years before the commencement of this action, and no evidence having been given of any

fact to take it out of the statute of limitations, the jury were bound to find for the defendant."

The judgment of the Supreme Court should be reversed, and a new trial ordered.

COMSTOCK, Ch. J., SELDEN, DENIO, DAVIES, and BACON, Js., were for affirmance; putting their judgment, in respect to the question of usury, as well upon the ground stated in the opinion of CLERKE, J., that the defendant was bound to allege and prove the foreign law which rendered the contract usurious, as upon the ground that it was assumed in the court below, as proved or admitted, that the law of Florida allowed interest to be reserved at the rate of eight per cent. COMSTOCK, Ch. J., concurred in the position of SELDEN, J., that usury could not be predicated of a sale of land with a stipulation for larger interest on the deferred payments than that limited by statute upon a loan.

Judgment affirmed.