## THE BOARD OF IMMIGRATION *vs.* BENITO T. DA ESTRELLA.

### APPEAL FROM HART, CIRCUIT JUDGE, THIRD JUDICIAL CIRCUIT.

### OCTOBER TERM, 1884.

### JUDD, C. J.; McCULLY and AUSTIN, JJ.

A labor contract, made in a foreign country, to be executed here, need not be acknowledged.

A foreign law must be proved, like any other fact.

A labor contract may be cancelled for the default or misdoings of the agents and overseers of the master.

An overseer of contract labor, guilty of cruelty or misusage, is a "master," and may be punished under the law prescribing penalties for cruelty by master to servant.

Decision of lower Court reversed.

### OPINION OF THE COURT, BY JUDD, C. J.

THIS case comes up by appeal of the plaintiff from a decision of Hon. C. F. Hart, Circuit Judge of the Island of Hawaii, in favor of defendant.

It appears by the record that the defendant signed a contract in writing on the 9th of May, 1881, at the Island of St. Michaels, wherein it is stated that he is desirous of emigrating to the Hawaiian Islands, there to be employed under the direction of the Board of Immigration of the Hawaiian Kingdom, and in consideration of facilitating (receiving) a passage to the Hawaiian Islands on board the bark Suffolk, and a further undertaking that the Board of Immigration will pay or cause to be paid to him certain wages, and other undertakings as to board, lodging, medical attendance, etc., etc., therein mentioned, the defendant agreed to "duly and faithfully perform such lawful and proper labor as he may be directed to perform, under the auspices of the Board of Immigration, for and during the space of five years next succeeding the date of the commencement of such service after

arrival in the Hawaiian Kingdom ; it being always understood that he shall not be compelled to labor on Sunday, or any holiday recognized by the Government, and that his services shall not be transferred without his consent," etc., etc.

It also appears that the defendant arrived at Honolulu, and was, by a written agreement, executed August 23, 1881, by the President of the Board of Immigration and the Star Mill Company, directed to labor for the said Star Mill Company, of Kohala, Hawaii.

In this agreement the Star Mill Company agree to pay the wages and to perform the other stipulations in favor of defendant originally promised and agreed upon by the Board of Immigration. The Star Mill Company agrees that the contract for the service of the said Benito Teixeira da Estrella shall not be transferred to any third party during the term of this contract, without the consent of the Board of Immigration or its agent. The Board reserves the right, on the representation of the laborer, to cancel the contract for any cause deemed by the Board to be sufficient, and to refund a proportionate amount of the money advanced by the Star Mill Company. "But if the agreement shall be cancelled by a magistrate for non-fulfillment, or violation of any of the conditions of the agreement on the part of the said Star Mill Company, then no refunding will take place."

The defendant went to Kohala under the direction above made, and has worked there for the Star Mill Company for a portion of the stipulated time. On the 24th July, 1884, he left his work, and was brought up before the Police Justice of North Kohala, and by him tried, and judgment rendered ordering him to return to the labor of the Star Mill Company. He thereupon appealed to Circuit Judge Hart. A power of attorney from the President of the Board of Immigration to G. R. Ewart, manager of Star Mill, was introduced, by which the Board authorizes G. R. Ewart to prosecute and defend in the name of the Star Mill Company, or in the name of the Board of Immigration, all cases and actions in which Portuguese and other laborers shall be a party, etc., and more especially those laborers under contracts set over by the Board of Immigration to the Star Mill Company. The defendant claimed that he went to work at Kohala for Mr. D. R. Vida, who,

it seems, was then the manager of the Star Mill Company. The Circuit Judge was unable to ascertain from the papers presented who, if the defendant was a bound servant, is his master, who for a possible breach of contract may be sued, fined and imprisoned. The point was also made that the contract was not acknowledged before a duly appointed agent, and that the contract was not stamped, as required by the laws of Portugal.

We deem that the above full statement of the case is necessary, in order to ascertain the legal status of the defendant.

Our statutes recognize two classes of labor contracts, which may be enforced under our somewhat peculiar labor laws. One class is of contracts made in this country, and the other class is of those made in a foreign country, to be executed in this. The former class is authorized by Section 1417, Civil Code, which reads as follows:

"Any person who has attained the age of twenty years, may bind himself or herself, by written contract, to serve another in any art, trade, profession, or other employment, for any term not exceeding five years."

The second class is recognized by Sec. 1418 of the Civil Code, which reads as follows:

"All engagements of service contracted in a foreign country, to be executed in this, unless the same be in contravention of the laws of this, shall be binding here; provided, however, that all such arrangements made for a longer period than ten years, shall be reduced to that limit, to count from the day of the arrival of the person bound in this Kingdom."

The contract in this case is one made at St. Michaels (a foreign country), between the Board of Immigration and the defendant. It is recognized by Sec. 1418, above quoted. It is not necessary to the validity of this contract that it be acknowledged. The law requires "all contracts for service authorized by Sec. 1417 of the Civil Code" to be acknowledged (Compiled Laws, p. 457); but these are domestic contracts only, and there is no statute requiring that contracts executed in a foreign country shall be acknowledged either in the country where made, or upon arrival in this Kingdom.

An acknowledgment to a contract is for the purpose of facilitat-

ing the proof of its execution; such is the effect given to it by the law, Sec. 5 of the Act of 1872 (Compiled Laws, p. 458). In the absence of a statutory requirement to this effect, a contract would be perfectly good without an acknowledgment.

Under an Act authorizing the Minister of the Interior to appoint agents in each election district to take acknowledgments to labor contracts, he could not appoint agents to act in a foreign country. If such were appointed, his certificate would add nothing of value to the contract, and if the contract was invalid, such an acknowledgment would not make it valid.

But the fact that the defendant made and entered into this contract is not disputed by him. The copy before the Court was introduced by him, and he has, in pursuance of the contract, received the benefit of a passage to this country, and has worked under it for some years.

We pass the question suggested, whether the contract is in conformity with the laws of Portugal, the dominion where it was made, with the remark that we have no evidence before us as to what the laws of that country are, or what they require.

A foreign law, relied upon as a defense, must be proved, like any other fact in the case.

*Frith vs. Sprague,* 14 Mass., 455; *Owen vs. Bogle,* 15 Me., 147; *United States vs. Wiggins,* 14 Peters, 334; *Cutler vs. Wright,* 22 N. Y., 472; *Murphy vs. Collins,* 121 Mass., 6.

But if the law of Portugal, applicable to such contracts, had been proved in the case, it would have to be established also that the want of formality in execution rendered the contract void, and was not a defect which could be cured.

We wish also to guard against committing ourselves to the view that it is essential to the binding effect here of a foreign contract, that it must fulfill the formalities required by the law of such country, the foreign law being proved. When such a case arises it will be considered.

The remaining question is, if the defendant has, by the papers in evidence, a "master" responsible under the law, whom he can call to account for cruelty, misusage or violation of any of the

terms of the contract, as set forth in the law (Compiled Laws, p. 462).

It is evident that the Board of Immigration in this case considered that the contingency might arise of the contract being cancelled by a Magistrate for default of the Star Mill Company, for it is stipulated that if the contract shall be so cancelled no refunding will take place. We think that the Board of Immigration has so far substituted the Star Mill Company in its own place as master over this servant, as to render the contract liable to be rescinded, and the laborer discharged from all obligations to serve under it, whenever, in the opinion of a Magistrate having jurisdiction, cruelty, misusage or violations of the terms of the contract shall be duly proven. We think that the judgment of the Magistrate in such a case should go further than to discharge the laborer from the service of the immediate employer and leave his original contract with the Board of Immigration still subsisting. The servant has a right to have his original contract annulled, for this is the contract which binds him.

If the cruelty or misusage be done to the laborer, or the violalation of the terms of the contract be occasioned by an overseer or other director of the laborer, and not the actual contracting master, the result would be the same as if done by the master himself, and the Magistrate would be authorized to cancel the contract.

The Star Mill Company, like the majority of the plantation enterprises in this country, is a corporation, but it has to work through managers, agents, officers and overseers, and the laborer can rely on his contract being cancelled by a Magistrate in a case made for the default or misdoings of these agents, by whatever name they may be called.

But the law says that a " master " can be fined in a sum not less than five nor more than a hundred dollars, and in default of payment be imprisoned at hard labor until the same is paid.

We think that any overseer or director of contract labor found guilty of cruelty or misusage is so far forth a " master " in the meaning of this law, and liable to the penalty above mentioned.

These provisions of the law are intended for the protection of the servant, and they apply in terms to contracts made abroad,

and in this country to the contracts contemplated by Sections 1417 and 1418 of the Civil Code.

Having thus found that the defendant is bound by a legal contract of service yet unfulfilled, the judgment of the Circuit Judge is reversed, and the defendant is ordered to return to the service of the Star Mill Company.

*W. R. Austin*, for the Board of Immigration.

*W. R. Castle*, for the Star Mill Company.

Honolulu, November 1, 1884.