[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 98 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 99 
The record in this case presents two main questions: one upon the exception to the decision of the judge, permitting the entries made in the memorandum-book kept by the witness Judson to be read in evidence to *Page 100 
the jury; the other upon the demurrer to the defendant's rebutter.
In regard to the point raised upon the bill of exceptions, it is to be observed that the official character of the notary had nothing whatever to do with the reception of the evidence. The circumstance that the witness Judson professed to act, in presenting the note for payment and in giving notice to the endorsers, as the clerk of his brother the notary, neither added to nor detracted from the force of his acts. Any officer or agent of a bank or any private citizen may, if authorized by the holder, demand payment of a note, and give notice of its non-payment, with the same effect as if done by a notary. The note in this case was payable at the Ogdensburgh Bank, of which the witness was teller; and the possession of the note by him was sufficient evidence of his authority to make the demand and give the notice. (Bank of Utica v. Smith, 18 John., 230.)
The memorandum in question was offered, in connection with the oral testimony, as evidence, not that the notary had performed the service, but that it had been done by the witness. The entries were made by the witness himself at about the time the acts were done, and in the usual course of his employment as clerk. The original entries were produced, and were fully verified by the witness, who testified that he knew they would not have been made if he had not done the acts. This brings the case clearly within the rule established in the case of Merrill
v. The Ithaca and Owego R.R. Co. (16 Wend., 586), and TheBank of Monroe v. Culver (2 Hill, 531), unless the objection urged by the defendant's counsel is sound. He insists that the entries in this case are not mere business entries, made by a clerk or agent in the performance of his ordinary duties, but that they purport to be made by a public officer, clothed by law with certain powers, whose written memoranda are under certain conditions made evidence of his official acts; and cites the case of The Onondaga County Bank v. Bates (3 Hill, *Page 101 
53), and the authorities there referred to, as showing that a notary cannot delegate his powers to a clerk or deputy, and that the attempt to do so is censurable; from which he argues that the entries in this case are to be regarded as made in violation of law, and not in the ordinary course of business, and that this illegal taint strips them of the credit which attaches to such as are legitimately made.
This argument, however, is based upon a misapprehension of the scope of the authorities referred to. The case of The OnondagaCounty Bank v. Bates simply decides that, in order to make the certificate of a notary evidence, per se, under the statute, of the facts stated in it, it is necessary that he should perform the duties in person, and that if he employs an agent for the purpose, his acts are deprived of their official character, and become subject to the ordinary rules of evidence.
The English authorities referred to in this case only condemn the employment of a clerk to perform those duties to which the official character of the notary is essential, such as the protesting of a foreign bill of exchange, but contain no intimation against the performance, through an agent, of acts which may properly be done by any private citizen.
As it is entirely immaterial to the validity of the acts themselves, in this case, whether they were performed by the witness as the clerk of the notary, as the agent of the bank or as a private individual, so I apprehend it is unimportant to the credit of the entry whether it was made in the books of the notary, in those of the bank or in the private memorandum-book of the witness.
There can be no doubt, therefore, that the memorandum in this case was properly received in evidence, and that the decision of the supreme court upon the bill of exceptions was right.
This conclusion is decisive of the case. The plaintiff having, by leave of the court, put in two distinct and separate replications to the plea of the statute of limitations, if he is *Page 102 
successful upon either of these, the defence set up in the plea is overthrown.
The verdict, therefore, upon the issue joined upon the first replication, being sustained, it follows that the judgment must be affirmed, whatever disposition may be made of the demurrer. This consequence is resisted by the defendant's counsel; but it admits of no doubt whatever. One sufficient answer to a single pleading is enough, and necessarily destroys its force and effect. If the second replication were stricken out entirely, or adjudged frivolous, it could not affect the first replication. The plaintiff would still be entitled to judgment upon his verdict sustaining that replication. It is not absolutely indispensable, therefore, to the disposition of the case, that this court should pass at all upon the issue of law. But as this issue presents questions of some moment as to the construction of the statute of limitations, in regard to which the decisions are conflicting, it seems expedient, since these questions are directly involved in the case, that this court should express its opinion upon them. Although the statute upon which the questions arise has been repealed, it is substantially reënacted in the Code (§ 100).
The principal questions presented by the demurrer in this case arise upon the defendant's rebutter, although the previous pleadings on both sides are assailed. The rebutter is alleged to be bad, for two reasons: 1. Because it does not show that the defendant returned to this state under such circumstances that the creditor might, with due diligence, have commenced his suit; and 2. Because it no way answers the material allegation in the surrejoinder, that the suit was commenced within six years next after the cause of action accrued, exclusive of the time of the defendant's absence from and residence out of the state; but tenders an issue as to the return of the defendant within the state, which is wholly immaterial. *Page 103 
The provision of the statute with reference to which the pleading in question was framed, and upon which the questions upon the demurrer in this case depend, is as follows: "If at the time when any cause of action specified in this article shall accrue against any person, he shall be out of this state, such action may be commenced within the times herein respectively limited after the return of such person into this state; and if after such cause of action shall have accrued, such person shall depart from and reside out of this state, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." (2 R.S., 297, § 27.) The first branch of this section is taken from our statute of limitations in force prior to the revision of 1830. (1 R.L.,
186, § 5.) Under this provision of the former statute it was held that the return of an absent debtor into the state, in order to come within the terms of the act, and to cause the limitation of the time for commencing the action to begin to run, must be so "public and under such circumstances as to give the creditor an opportunity, by the use of ordinary diligence and due means, of arresting such debtor." (Fowler v. Hunt, 10 John., 464.)
The allegation here is that the defendant "returned publicly to this state." It is insisted by the plaintiff that this is not enough, but that the defendant should have gone further, and alleged the circumstances necessary to bring the case within the decision in Fowler v. Hunt.
The supreme court so decided, and held the rebutter to be bad for this reason. The superior court of the city of New-York, in the case of Ford v. Babcock (2 Sandf. S.C.R., 518), has decided directly the reverse. The decision of the supreme court in this case, which is reported in 2 Barb., 309, was referred to and considered by the superior court in deciding the case ofFord v. Babcock. The reasoning of Judge DUER upon this point seems to me conclusive, and I therefore adopt it. His argument is substantially this: that whenever a statute gives a cause of action or defence, it is sufficient, in *Page 104 
declaring upon or pleading the statute, to follow the words of the act; and that where the courts, in construing a statute, have put an interpretation upon it different from the literal import of its language, they will of course be bound to give the same interpretation to the same words when used in a declaration or plea founded upon the statute. And again, that it having been held in several cases, to wit, Faw v. Roberdeau (3 Cranch,
174), Fowler v. Hunt (10 John., 464), White v. Bailey
(3 Mass., 271), and Little v. Blunt (16 Pick., 369), that when a defendant pleads a return under the statute, he is bound to prove all the facts necessary to make such return effectual, although none of these facts are expressly averred, it follows that the plea cannot be defective for want of such averment; that if the averment adds nothing to the proof which the defendant is under obligation to produce, it cannot be necessary to the validity of the plea.
The conclusion from this reasoning is inevitable, that the rebutter is in this respect sufficient, and that the decision of the supreme court upon this point was erroneous.
The next question is whether the rebutter is bad, because it does not in any way answer the allegation in the surrejoinder that the action was commenced within six years after the causes of action accrued, exclusive of the time of the defendant's absence from and residence out of the state. This question depends mainly upon the accuracy of the construction of the statute upon which the surrejoinder is based. We shall have a clear view of the opposite constructions put upon the statute in question, by the defendant in the rejoinder and rebutter upon the one hand, and by the plaintiff in the surrejoinder on the other, if we recur for a moment to the series of pleadings terminating in the demurrer.
Plea: That the causes of action did not accrue within six years next before suit. *Page 105 
 Replication: That after the causes of action accrued, to wit, on the 1st of May, 1835, the defendant departed from and resided out of the state for the space of five years; and that the action was commenced within six years, c., deducting the time of such absence.
Rejoinder: That after the departure alleged in the replication, to wit, on the 1st of May, 1837, the defendantpublicly returned into the state, and that the action was not commenced within six years after such return.
This rejoinder assumes that the latter branch of § 27 provides for only a single absence; and that where a debtor has once left the state, after the accruing of the causes of action, and returned, the action must be commenced within six years after such return, without regard to any subsequent absence.
Surrejoinder: That after the return mentioned in the rejoinder, to wit, on the same day, the defendant again departed from and resided out of the state for the space of four years, and that the action was commenced within six years next after the causes of action accrued, exclusive of the time of the defendant's absence, c.
The surrejoinder is evidently based upon a construction of the statute directly opposite to that assumed by the rejoinder, to wit, that the latter branch of § 27 provides for the case of successive absences; and that where they are repeated, not only the first, but the aggregate of the whole is to be deducted.
Rebutter: That at the time of the accruing of the causes of action, and at the time of the return mentioned in the surrejoinder, the defendant resided out of this state; that afterwards, to wit, on the 1st of September, 1837, he returnedpublicly into the state, and that the action was not commenced within six years after such last mentioned return.
The allegation in the rebutter, that the defendant resided out of the state when the causes of action accrued, seems to *Page 106 
have been intended to raise the question, whether the latter branch of § 27 applies at all to such a case. Beyond this the rebutter is a mere reiteration of the ground taken in the rejoinder.
From this brief review of the pleadings, it will be seen that two questions are presented in regard to the construction of the section of the statute in question, to wit: 1. Whether the latter branch of the section can have any application to a case where the debtor resides out of the state at the time when the cause of action accrued; and 2. In a case to which this branch of the section does apply, whether the aggregate of successive absences or only the first absence is to be deducted.
Both these questions have been presented to the courts upon several occasions, and the decisions upon them are irreconcilably conflicting. The first arose in the case of Randall v.Wilkins (4 Denio, 577). The court in that case held that, where the debtor resided out of the state when the cause of action accrued, the statute would commence running whenever he should come openly and publicly into the state, so that the creditor, by the exercise of ordinary diligence, might cause process to be served upon him; and that, having once commenced, it would continue to run, although the debtor should immediately leave the state, and continue abroad until the limitation had expired. The view taken by the court in this case seems to have been, that the first and second branches of § 27 were intended to provide for entirely distinct classes of cases; the first being intended as a reënactment, without modification, of that portion of the former statute from which it was copied, and the second designed to be limited to cases where the debtor is within the state when the cause of action accrues.
But this case stands not only wholly unsupported in this view of the statute, but directly opposed to the other cases in which the question has arisen. In Didier v. Davison (2 Barb. Ch.R., 477), Chancellor WALWORTH puts a construction *Page 107 
upon this section entirely adverse to that adopted in Randall
v. Wilkins. It is true that the point does not appear to have been seriously contested in that case; but in the case of Ford
v. Babcock (supra), the subject was very fully considered, and it is, I think, there conclusively shown that the construction adopted in Randall v. Wilkins is irreconcilable with either the letter or spirit of the statute. So far, therefore, as the validity of the rebutter rests upon that construction, it must be held to be defective and bad.
The only remaining question is whether successive absences can be accumulated and the aggregate deducted, under the latter branch of § 27, in cases to which that branch of the section applies. There is but a solitary decision, aside from that of the supreme court in this case, upholding the negative of this question, to wit, that of Mr. Justice NELSON in the case ofDorr v. Swartwout (5 N.Y. Leg. Obs., 172). This was the only authority cited by the supreme court to sustain the view taken of the statute in this case. But the case of Dorr v.Swartwout is in direct conflict not only with the opinion of Chancellor WALWORTH in the case of Didier v. Davison, and with that of the superior court of New-York in the case of Ford
v. Babcock, but also with that of the late supreme court in the case of Burroughs v. Bloomer (5 Denio, 532). In the last two of these cases, the case of Dorr v. Swartwout is expressly referred to and disapproved; and in the case of Ford
v. Babcock its construction of the statute is, I think, successfully overthrown by a process of cogent reasoning drawn from the evils which existed under the former law and the apparent design and object of the new provision. I have no hesitation, therefore, in adopting the construction, in this respect, given to the statute in the three cases last referred to, rather than that adopted in Dorr v. Swartwout.
It follows from this that the surrejoinder is good, the rebutter bad, and that the plaintiff is entitled to judgment upon the demurrer. *Page 108 
The supreme court held the surrejoinder to be bad as well as the rebutter; but as it also held the rejoinder bad, the decision of that court upon the demurrer, although resting upon an entirely different view of the statute, was the same as that to which I have arrived.
The judgment of the supreme court must therefore be affirmed.
All the judges (except RUGGLES, J., who gave no opinion on the demurrer) concurred in the above opinion upon all the points discussed.
Judgment affirmed.