55b 505
19ap436
55b      505
172 NY³502
172 NY⁴503

HORATIO BASSETT *vs.* ISAAC H. BASSETT and ROBERT W. ABORN.

The defendants and P. & Co. were in the habit of exchanging blank notes, which were filled up by the holders as they were used. Certain notes, in suit, were made and indorsed by the defendants' firm, and delivered to P. & Co. for their use, and were indorsed by the plaintiff for the accommodation of P. & Co. to facilitate the discount of them for that firm; and on the delivery of such notes to P. & Co. the latter gave in exchange, in part, trade paper, and in part blank notes to be filled up by the defendants for their use. *Held* that the notes in suit were not to be deemed merely accommodation paper, but were business paper, negotiated for value; and that the plaintiff, as indorser, having paid and taken them up, could recover the amount of the defendants.

Certain jewelry was pledged to the plaintiff, by the defendants, to secure the payment of notes given by the latter and indorsed by the former for the benefit of P. & Co., including the notes in suit. Such jewelry was not to be used if the notes could be collected of the makers. No demand was ever made, nor any consent given that it should be disposed of for that purpose, prior to the bringing of a suit by the defendants' assignees against the plaintiff, in which an order was made, directing the sale of the jewelry. *Held* that there was no obligation on the plaintiff to sell, prior to that time, nor any duty owing by him to the defendants, by which he could be held responsible for an omission to sell previous to such order of the court.

Notes were made and dated and fell due in 1854, the maker being then a resident of this State. He left this State in 1854 and moved his family to New Jersey, where he resided and kept house, from that time till 1864; during which period his business was in New York, and on week days he was in the city daily, returning to his home at evening. In an action brought upon the notes in 1866, *it was held* that the statute of limitations did not run while the defendant resided in New Jersey; and that the suit was not barred.

The object of the exception in the statute was to give the creditor the whole of six years' residence in the State within which to commence his action. He is not obliged to follow the debtor to another State; nor is he called upon to watch him to ascertain whether he comes into the State for a temporary purpose, so long as his residence is elsewhere. *Per* INGRAHAM, P. J.

APPEAL by the defendant Aborn from a judgment entered on the report of a referee.

The defendants and C. C. Peck & Co. were in the habit of exchanging blank notes, which were filled up by the holders as they were used. The notes in suit were signed and indorsed by Isaac Bassett, one of the defendants'

firm, delivered to C. C. Peck & Co. for their use, and were indorsed by the plaintiff for the accommodation of C. C. Peck & Co., at the request of Charles H. Bassett, to facilitate the discount of them for that firm. On the delivery of the notes to Peck & Co., they gave, in part, trade paper, and in part blank notes to be filled up by Bassett & Aborn for their use. There is evidence to show that these notes were filled to a large amount and used for the benefit of Bassett & Aborn. It is also in proof that Peck & Co.'s notes to Bassett & Aborn would have amounted to much more than the notes of the latter firm given to Peck & Co. Before these notes became due both firms failed, and Bassett & Aborn made an assignment, in which these notes are stated to be indorsements of the plaintiff for the accommodation of the firm. After the notes were indorsed, certain jewelry was delivered to the plaintiff as security, and upon the condition that if the notes could not be collected, the proceeds of the jewelry were to be applied to the payment of the notes. This was in August, 1854. A suit was brought by the assignee of Bassett & Aborn, against the plaintiff, to determine whether these notes were a valid claim against the assignee, and a decision was rendered in favor of Horatio Bassett, but the assignment was set aside. In the progress of that action an order was made directing the jewelry to be sold, and the proceeds applied to the payment of the notes; and such jewelry was sold for about one-third of the value at which it was appraised when delivered to the plaintiff.

When the notes fell due, they were not paid by the makers, and the plaintiff, as indorser, took them up and brings this action for the amount. A question also is made as to the effect of the statute of limitations, on the following facts. The notes were dated and fell due in 1854. The action was commenced in 1866. Aborn left the State of New York and moved his family to New Jersey, where he kept house from September or October, 1854, until De-

cember, 1864. During all his residence in New Jersey his business was in New York, and during week days he was daily in the city, returning to his home at evening. In December, 1864, they came to the city and stayed during the winter, returning to New Jersey in the spring of 1865. He spent the winter of 1865 in New York, and in November, 1866, removed from New Jersey to the city. The referee reported in favor of the plaintiff, and the defendant Aborn appealed.

*Wm. H. Leonard,* for the appellant. I. The referee errs in his fifth finding of fact, that the eight notes in suit were delivered to C. C. Peck & Co. for their blank notes and trade paper, and in his second conclusion of law, that they thereby became business paper negotiated for value. The weight of evidence is the other way. Isaac Bassett contradicts it. So does Mr. Aborn. He testifies that no business paper was received from Peck & Co. in exchange for the notes in suit. Had it been so, he must have known it. The finding is supported only by the testimony of Charles H. Bassett. Peck & Co. furnished the jewelry as security for the notes. They would not do so, had they paid a consideration to Bassett & Aborn. Charles says there was no agreement on the subject. He may have left his blank notes with the defendants, but if he received the defendants' notes, it was not in exchange or with the knowledge of Aborn. Charles also admits that there was an indebtedness of Peck & Co. on the books, to Bassett & Aborn.

II. The plaintiff stands in no better situation by reason of having paid the money for the notes on his indorsement after their discount at bank, than he would if he had paid the money at the time he indorsed them. Charles Bassett swears that he procured the indorsement of the notes by Horatio, and that he received the proceeds on their being discounted. Horatio told Aborn that he knew from the

large, bold writing, that his brother Isaac signed them. Charles also stated to Horatio the purpose for which he desired the indorsement. It is clear that Horatio knew the notes were given for the accommodation of Peck & Co., and that he had sufficient reason to suspect that they were made by his brother Isaac only. The preference of the notes in the assignment of Bassett & Aborn is sufficiently explained in the testimony of Aborn.

III. The referee erred in his sixteenth finding, that when the plaintiff indorsed the notes he had no knowledge or notice that the same were not business paper.

IV. The referee erred in concluding as a matter of law, that the plaintiff owed no duty to the defendants, in regard to the jewelry, which he has not discharged. The plaintiff should have sold before the value had so far declined by age—about seven years—after it was pledged. The orders of the court afford no justification or answer for the injury occasioned by the delay. Mr. Aborn was ignorant of the existence of the security, and had no notice of the sale. The orders were not evidence as against Mr. Aborn, as it does not appear that he was a party to those actions. The referee ought not to have considered them in his findings of fact.

V. The demands were barred by the statute of limitations at the time this action was commenced. Twelve years had elapsed since these causes of action accrued; during all that time the defendant was daily amenable to the service of process in the city of New York. He is not, within the meaning or intent of section 100 of the Code of Procedure. (*Power* v. *Hathaway*, 43 *Barb.* 214. *Ford* v. *Babcock*, 2 *Sandf.* 522. *Cole* v. *Jessup*, 6 *Seld.* 96.) These cases hold that the object of the statute is to afford the creditor an opportunity to serve process. A fair and liberal construction of section 100 does not include the defendant. He did not "*depart from* and reside out of the State;" nor was he continuously absent at any time.

The only case holding an opposite doctrine is that of *McCord* v. *Woodhull*, (27 *How. Pr. Rep.* 54,) which is a special term decision in this district by Judge Balcom.

*Brown & Estes*, for the respondent. I. This action was brought by the plaintiff to recover the amount of eight promissory notes, made by the late firm of Bassett & Aborn, composed of the defendants in the suit, Robert W. Aborn and Isaac H. Bassett, and delivered by the defendants to the firm of C. C. Peck & Co., in exchange for the notes and trade paper of the last named firm. The plaintiff indorsed these notes as an accommodation indorser, and they were then discounted in the Arcade Bank of Providence. These exchanges were for mutual accommodation, and the notes and paper received by the defendants of C. C. Peck & Co., unpaid at and after the time of maturity of the notes in suit, amounted to $16,000 and upwards, discounted in several banks, or pledged therein as collateral security by the defendants. There can be no question as to the valuable consideration of the notes in suit, especially as against the plaintiff, an accommodation indorser thereof, without notice of any of the alleged defenses of the defendant Aborn. He indorsed the notes at the request of C. C. Peck & Co., and that firm procured their discount in the Arcade Bank of Providence upon the strength of the plaintiff's indorsement. Before these notes fell due, Bassett & Aborn and C. C. Peck & Co. failed and became insolvent, and Bassett & Aborn made a general assignment to one George F. Thomae for the benefit of their creditors, preferring therein the indorsements of the plaintiff of the notes in question. The notes were not paid, and being protested for non-payment, the plaintiff paid them to the Arcade Bank, and received the notes from the bank. He thus became subrogated to all the rights of the bank, and can recover in this action if the bank could do so. (*See Flint* v. *Schomberg*, 1 *Hilt.* 532. 1 *Abb. Dig.*

472 n., 509. *Smith* v. *Gardner*, 4 *Bosw.* 54.) The defendant Aborn claims that the notes were signed by his partner, Isaac H. Bassett, to accommodate C. C. Peck & Co., without any consideration, and without authority from the firm; but it clearly appears from the evidence that his partner, Bassett, made the firm notes, and attended to that branch of the business. That large exchanges of the defendants' firm notes were made with C. C. Peck & Co., for their notes and trade paper; more than $20,000 of which had been pledged or discounted in banks when the defendants failed, and was unpaid. Aborn also says he did not intend to recognize these notes when he executed the assignment, yet he executed it in fraud of creditors if they were not a legal obligation of his firm. He says, in a conversation with the plaintiff, after the commencement of this suit, in which he sought a compromise, that the plaintiff told him he knew Isaac H. Bassett made the notes, from his large handwriting; but there is no reason why he should not have made them; either partner could do so, and Bassett was the partner who attended to this business, and the plaintiff had indorsed other like notes of the defendants, which were paid. But conceding that the notes were given to accommodate C. C. Peck & Co., without consideration and without Aborn's consent, there is no evidence in the case showing that the plaintiff, or the bank, knew any of these alleged facts, and they constitute no defense as against either the bank or the plaintiff; they both stand in the relation of *bona fide* holders for value; and as it was within the scope of the partnership for Bassett, a partner, to make the notes, his partner Aborn cannot interpose his defense successfully, as against an innocent holder for value.

II. A second defense is, that the defendants were the owners of some jewelry which, as alleged, was improperly put into the plaintiff's hands, and which he is alleged to

have converted, and the value of it is sought to be set off against the notes.

The absurdity of this defense will appear in the defendants' own evidence, by the witnesses Isaac H. Bassett and Charles H. Bassett. They say that the jewelry was manufactured by C. C. Peck & Co., and by them placed in the plaintiff's hands as collateral security for the payment of these notes. Both say that they consented to the pledge. Charles says, that although it was formally billed to the defendants, they had never received it or paid for it; that it was invoiced to be used in the plaintiff's hands as collateral to the defendants' notes. But in the event, it was the defendants' property. They assented to the pledge to secure the plaintiff for indorsing their notes, and in either event of ownership, the goods were. legally pledged. Aborn's partner, if they owned the jewelry, had the same right to pledge it as security for the payment of the notes as he had to make the notes, and especially as the firm received a consideration for the notes.

If I. H. Bassett had improperly given the notes to C. C. Peck & Co., and improperly pledged the goods to secure the plaintiff's indorsement, it was a matter purely between himself and partner, and not affecting the rights of innocent holders; and if the defendant Aborn had any right to the goods, he lost it by his assignment to Thomae, the general assignee, who holds his interest. These goods were held by the plaintiff a long period before he sold them; they had depreciated in value, in the meantime, by change of styles, being cheap goods, and depending almost entirely upon style for their value. The nature of the pledge was, that the plaintiff might resort to the jewelry if he could not collect the notes. The plaintiff endeavored to collect the notes from the assignee, he being a preferred creditor, but the assignee refused payment, upon the ground that the notes were not distinctly described in the assignment, and a bill was filed to get a construction, and

it was adjudged that the notes were preferred. The plaintiff then applied for an order to sell the goods, which was granted. He proceeded to sell as soon as the order was obtained. He obtained nothing from the assignee, because the assignment was set aside as to a judgment creditor's claim, and the balance in the assignee's hands was absorbed by that claim. The plaintiff was guilty of no negligence in selling. But independent of the nature of the pledge, and the necessary delay in attempting to collect from the assignee, the plaintiff was not bound to sell the goods. It was the duty of the pledgors to pay the debt and redeem the goods. (*See Story on Bailment*, §§ 316–320, *inclusive.*) The plaintiff sold the goods for all they were worth. The order of the court in the suit, authorizing the plaintiff to sell the goods, was good authority, and no notice to the defendant was necessary, other than the order. The assignee only was entitled to notice of sale, and he was a party to the suit. If, however, a notice to the defendants was requisite, and the sale was a conversion, the amount realized from the sale, less the expenses, was all they were worth. Woodbury so testifies, as well as the other witnesses, as to value. All concur in the fact that the goods were never worth half the invoice price, and they were sold for all they were worth at the time of sale, when it is claimed they were converted. No demand was made of the goods. If the jewelry belonged to Bassett & Aborn, they passed to Thomae by the general assignment, and Aborn had no interest in them after that. The plaintiff speaks of the assignment being set aside, but this was by a creditor, and could only be so far set aside as to satisfy the debt; the effect would not be to pass title back to the assignors, at any rate.

III. The causes of action were not barred by the statute of limitations. It is undisputed that the defendant departed from this State, where he resided, and obtained a residence in Orange, New Jersey, in the fall of 1854, about the time

the notes were maturing, and continued to reside there until December, 1866.　That during this period he had a place of business in New York city, part of the time as a clerk, and more recently as a merchant.　That he came from his residence into the city of New York nearly every business day, except certain vacations, during this period of non-residence.　That this action was commenced in May, 1866. The action, being on contract, would have been barred by the statute in six years from the time the causes of action accrued, except for the provision of the Revised Statutes re-enacted by the Code, (§ 100,) which is as follows, viz : "If when the cause of action shall accrue against any person, he shall be out of the State, such action may be commenced within the terms herein respectively limited, after the return of such person into the State ; and if after the cause of action shall have accrued, such person shall depart from and reside out of the State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action."　Prior to the amendment of 1830, the Revised Statutes simply provided that if, at the time when any cause of action specified in this article shall accrue against any person, he shall be out of the State, such action may be commenced within the terms herein respectively limited, after the return of such person into this State.　Under this provision it was held in *Fowler* v. *Hunt*, (10 *John.* 464,) that where a defendant was absent from the State when the cause of action accrued, and he subsequently returned into the State, the statute commenced to run and continued to run, even though he immediately departed again and remained absent.　After the amendment of 1830, which made the section in substance as re-enacted by the Code, (§ 100,) the court held in *Randall* v. *Wilkins*, (4 *Denio,* 577,) that where the defendant resided abroad when the cause of action accrued, and he returned into this State for one or two days, and then departed and remained away, such return set the

statute in motion, and the cause of action was barred. The court, at page 580, held that the first clause was not affected by the second clause of the section, and therefore held with *Fowler* v. *Hunt.* But this case was directly reviewed and reversed by the case of *Burroughs* v. *Bloomer,* (5 *Denio,* 532,) which was a case precisely like that now before the court. The defendant resided in New Jersey, and did business in New York city, and he came to New York almost daily to attend to his business. The court held "that the defendant must be within the State six years after the cause of action accrues, so the plaintiff might sue him any time." They went further than is necessary to sustain the decision of the referee in this case, and held also " that the time of the defendant's absence is not to be taken as any part of the six years, and that fractions of days will not be computed." That the expressions " and reside out of the State " and " the time of his absence " have the same meaning—they are correlative expressions; so that while the defendant resided out of, he was absent from the State, and until he became a resident the suspension of the operation of the statute continued. Then came the case of *Didier* v. *Davison,* (2 *Barb. Ch.* 477,) in which the chancellor held that a defendant must be at least six years within the State before the statute could create a bar. In approval of this case is the case of *Ford* v. *Babcock,* (2 *Sandf.* 518.) The question there arose on the pleadings by demurrer. Two questions were raised and passed upon, Justice Duer giving the opinion : 1st. Whether the new exception created, being the second clause, is confined, in its proper application, to persons who were residents in this State when the cause of action accrued. 2d. And whether, in the cases in which this exception applies, it is the first period of absence only, and not successive periods, that must be deducted and allowed. (*Page 525.*) The court hold that residents and non-residents alike are affected by the second clause, and that

aggregate absences may be deducted; that the words "such person," in the second clause, relate to the person described in the first, and residents and non-residents, or persons within and without the State where the cause of action accrued, are plainly included. (*See Id.* 526, 527.) The court further hold that the debtor must prove that in the aggregate, deducting the period of each absence, he was six years within the State. (*See pages* 527, 529.) Justice Duer reviews all the cases above cited, dissenting entirely with *Randall* v. *Wilkins,* and does not approve of the obiter opinion of the court in *Burroughs* v. *Bloomer,* that non-residence is constructive absence in all cases, (*see page* 531,) but would seem to approve of the rejection of evidence of short fractional periods of the presence of the debtor within the State, as in this case, because Justice Duer says, (at page 529,) in laying down the rule, "that aggregate absences may be deducted; that it is subject to the modification that where a defendant against whom the statute has begun to run, is a resident of the State, and continues to reside therein, his occasional absences are not to be deducted in computing the statutory term." This rule has been adopted in many cases because of the difficulty in making such proof; and the rule applies with all its force to this case, in proving the temporary visits to New York, as well stated by Justice Balcom, in the case of *McCord* v. *Woodhull,* (27 *How.* 54.) This case was precisely like the case at bar; and Justice Balcom carefully reviews all the cases, and holds that the defendant, in a case like this, must be six full years within the State to bar the action, and that frequent returns, only for fractions of a day, cannot be taken into account in determining whether the action is barred. In this he claims to be sustained by *Cole* v. *Jessup,* as well as *Ford* v. *Babcock.* (*See Cole* v. *Jessup,* 10 *N. Y. Rep.* 96.) These cases (except the earlier one of *Randall* v. *Wilkins*) uniformly hold that the defendant must be six full years within the State, so as to

be at all times amenable to the service of process, and as the referee has found the fact to be otherwise in this case, the judgment should be affirmed.   The case is unincumbered by any other question under the statute, for if he had computed fractions of days to ascertain whether the defendant had been six full years within the State, it will be seen that such was not the case.   And it is absurd to contend, as against the settled authorities cited, that a return into the State by a non-resident, however open, can benefit the defendant for a longer period than he remains. The only question that can be considered unsettled by the Court of Appeals, is how far the courts may compute brief periods of absence or returns of debtors seeking to avail themselves of the statute of limitations; and this question is settled by the cases of *Burroughs* v. *Bloomer*, *McCord* v. *Woodhull*, and *Ford* v. *Babcock*, in the Supreme and Superior courts, that neither plaintiff or defendant can avail himself, in a case like this, of short absences from or returns into the State.   Since this cause was tried, the case of *Bennett* v. *Cook et al.*, involving the same facts of this case in reference to the statute of limitations, has been decided by the general term of the Superior Court, in which they hold the statute was not a bar.   Chief Justice Robertson decided the case, but died before his decision was announced, as we are informed by Judge Monell, who announced the decision, all the justices concurring.   In the case of *Cowart* v. *Cook*, involving the same question, the plaintiff obtained a verdict, and the defendant has appealed.   The case is in the New York common pleas. The cases cited gives a reasonable and fair construction of the statute.   The defendant departed from and resided out of the State until the commencement of the action, and the time of his absence cannot be deemed or taken as any part of the time limited.   Deducting his actual absence, the literal construction of the statute, and the defendant was not within the State six years, as found by the referee.

Bassett *v.* Bassett.

If his temporary visits cannot be accumulated, he was not within the State at all, within the meaning of the statute, which seems to be the settled doctrine, because, as the courts say, mere temporary absences and returns cannot be taken into account, although more extended ones may be. The effect of a successful defense upon a plea of the statute of limitations being to deprive a forbearing creditor of an honest claim, as it in effect admits that there is no other defense, will not receive the favor of the court.

*By the Court,* INGRAHAM, P. J. There can be no doubt as to the sufficiency of the evidence to sustain the finding that the notes in suit were exchanged for notes received in trade, and for blank notes of Peck & Co., signed by them and delivered, with authority to the defendants to fill up as they pleased. Charles Bassett testifies that the notes were given in exchange for trade notes and the notes of C. C. Peck & Co. signed in blank; and that the consideration of the notes in suit was the trade paper and the notes signed in blank. Isaac Bassett, while he says he don't know that the defendants received anything on account of these notes, on cross-examination, says that "the defendants received notes of Peck & Co. in blank, and that they were used by the firm to a considerable amount, and that the proceeds were used for their benefit." Charles Bassett also states that Peck & Co.'s indebtedness to the defendants amounted to some $16,000, while their indebtedness would have amounted to $7000. Without further evidence, it would have been difficult to sustain a finding that the notes in suit were merely accommodation paper. Aborn's testimony to the contrary, is only a want of knowledge on the subject; while the testimony of the other witnesses is positive. The case in 3 *Denio,* 187, is not in conflict with these views, but holds that the notes are exchanged notes, if made to be negotiated and used.

The jewelry pledged as security for the notes was delivered by Charles to the plaintiff to secure the payment of notes given for the benefit of Peck & Co., including the notes in suit. It was not to be used if the notes could be collected of the makers. No demand was ever made, nor any consent given, at any time, that it should be disposed of for that purpose, prior to the bringing of the suit in which the order was made directing the sale of the jewelry and the appropriation of the proceeds. There was no obligation on the plaintiff to sell prior to that time, nor any duty owing by him to the defendants by which he could be held responsible for an omission to sell previous to such order of the court. If there was any responsibility, it was to Charles, and I think none to him, until he requested the sale to be made.

The remaining question is as to the statute of limitations. The evidence shows that the defendant Aborn left this State in 1854, and resided in New Jersey until 1864; but during that period was in New York daily attending to his business. The defendant claims that his daily coming to New York on business prevented the allowance of the time he resided in New Jersey from being considered a suspension of the running of the statute. The words of the statute are, "if after the cause of action shall have accrued, [the debtor] shall depart from and reside out of the State, the time of his absence shall not be deemed or taken as any part of the time limited for the commencement of such action." In *Burroughs* v. *Bloomer*, (5 *Denio*, 532,) which was a case similar to the present, the debtor removed to New Jersey and resided there, but had a place of business in New York, which he was in the habit of frequenting, sometimes monthly and sometimes daily. The judge charged that the jury were to find whether the time the debtor had spent in the State amounted in the aggregate to more than six years, and if so, to find for the defendants. The Supreme Court held

the charge to be too favorable to the defendant, and that the statute ceased to operate as long as the defendant continued to reside abroad, notwithstanding his return to the State on business. In *McCord* v. *Woodhull*, (27 *How. Pr. Rep.* 54,) it was held that a resident of New Jersey, who spent business hours daily in New York, could not claim the limitation during such residence. The case of *Cole* v. *Jessup* (10 *N. Y. Rep.* 96) arose upon demurrer, and is authority for the doctrine, that in a pleading it is enough to aver that the debtor left the State and resided out of it for a definite time, and that the action was commenced within six years after such return; and that successive absences may be accumulated and deducted.

The construction asked for by the defendant is not consistent with the words of the statute, nor with the intent. The object of the exception is to give the plaintiff the whole of six years' residence within the State within which to commence his action. He is not obliged to follow the debtor to another State; nor is he called upon to watch him to ascertain whether he comes into the State for a temporary purpose, so long as his residence is elsewhere. It may also be said that it was intended to give the creditor control, as well over the person as the property of the debtor, by requiring a residence in the State to give effect to the limitation. This would not be the case if temporary return from time to time could overcome the residence abroad.

The judgment should be affirmed.

[New York General Term, January 3, 1870. *Ingraham, Geo. G. Barnard* and *Brady*, Justices.]